1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    CENTRAL DISTRICT OF CALIFORNIA

7

8    DARLENE COUCH,                    )   CV 07-3916 FMC (PLAx)
                                       )   CV 07-3537 FMC (VBKx)
9                                      )   CV 07-3643 FMC (VBKx)
                    Plaintiff,         )   CV 07-3647 FMC (VBKx)
10                                     )
     v.                                )   **ORDER DENYING DEFENDANTS'**
11                                     )   **MOTIONS AND JOINT MOTIONS**
                                       )   **TO DISMISS**
12   TELESCOPE, INC., et al.,          )
                                       )
13                  Defendants.        )
     _____)
14   KAREN HERBERT, et al.             )
                                       )
15                  Plaintiffs,        )
     v.                                )
16
     ENDEMOL USA, INC., et al.
17
                    Defendants.
18   _____
19   CYNTHIA CUNNINGHAM,

20                  Plaintiff,

21   v.

22   ENDEMOL USA, INC., et al.

23                  Defendants.
     _____
24   CHERYL BENTLEY, et al.

25                  Plaintiffs,

26   v.

27   NBC UNIVERSAL, INC., et al.

28                  Defendants.

1
2
3
4
5
6
7
8
9
10
11
12

13
14

15
16
17
18
19
20
21
22
23
24
25
26
27
28

This matter is before the Court on Defendants' Motions to Dismiss (docket no. 20), filed August 22, 2007 (*Couch v. Telescope, Inc. et al.*) and Defendants' Joint Motions to Dismiss (docket nos. 24/27, 23, and 27), filed August 15, 2007, (*Herbert v. Endemol USA, Inc. et al.*; *Cunningham v. Endemol USA, Inc. et al.*; and *Bentley et al. v. NBC Universal, Inc. et al.*, respectively).  The Court has read and considered the moving, opposition, and reply documents filed in connection with these motions, as well as the parties' supplemental briefs, filed pursuant to the Court's October 12, 2007 Order.  The Court deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearings set for December 3, 2007 are removed from the Court's calendar.  For the reasons and in the manner set forth below, the Court hereby **DENIES** Defendants' Motions.


**I.  Background**

These four cases all involve games conducted in conjunction with four popular television programs: *American Idol*, *Deal or No Deal*, *1 vs. 100*, and *The Apprentice*.  The Defendants in all four cases have brought motions to dismiss. As these motions present identical legal issues and involve similar facts, the goal of judicial economy warrants their joint resolution.  Except as noted, this Order applies equally to all parties in each of the four presented cases.

A.  <u>*Couch v. Telescope:* The American Idol Challenge</u>

*American Idol* is a televised singing competition that has been broadcast by Defendant Fox Broadcasting Company since 2002.  (Compl. ¶ 17.)  During airings of the program, promotions invite viewers to participate in the "American Idol Challenge," a trivia game.  (*Id.* ¶¶ 18.)  A trivia question is posed, along with three possible answers.  (*Id.*)  Viewers then have 24 hours to answer the question, either by sending a text message to 51555 or by registering on the program's website.  (*Id.* ¶¶ 18-20.)  Although entering online is free, viewers who enter by

2

sending text messages incur a 99 cent fee, in addition to standard text messaging rates charged by their wireless carriers. (*Id.* ¶ 19.) Each week, winners are selected at random from among those entries with correct answers. (*Id.* ¶¶ 21, 22.) There is a $10,000 weekly prize and $100,000 grand prize. (*Id.* ¶ 24.) The promotion is broadcast from California and the game is administered, at least in part, in Connecticut by Defendant Project Support Team, Inc. (*Id.* ¶¶ 20, 22.)

Plaintiff Darlene Couch, a Georgia resident, has entered the American Idol Challenge via text message, paid the 99 cent fee, and has not won a prize. (*Id.* ¶¶ 5-6.) She alleges that the American Idol Challenge is an illegal lottery. (*Id.* ¶¶ 28, 29.) She now seeks relief under California Business and Professions Code § 17200 (the Unfair Competition Law, or "UCL") and Connecticut General Statute § 52-554. (*Id.* ¶¶ 39-46.) Defendants move to dismiss both claims for relief.

B. *Herbert et al. v. Endemol USA, Inc.*: The Lucky Case Game

*Deal or No Deal* is a game show broadcast since 2005 by Defendant NBC Universal, Inc. (Compl. ¶ 14.) During each airing of the show, viewers are invited to play "The Lucky Case Game." (*Id.* ¶ 15.) Viewers are shown six brief cases; they must then submit the number marked on the case that they think holds the prize. (*Id.*) They may do so by sending a text message with their answer to 59595 or by registering online on the program's website. (*Id.* ¶ 16.) Although entering online is free, entering by text message costs 99 cents in addition to the standard text messaging fees charged by viewers' wireless carriers. (*Id.* ¶¶ 16, 17.) The winner, chosen at random from the correct guesses received, is announced later in the show. (*Id.*) *Deal or No Deal* is produced in California. (*Id.* ¶ 15.) The prize drawing takes place in Massachusetts. (*Id.* ¶¶ 16, 17.)

Plaintiffs Karen Herbert, Judy Schenker, Jodi Eberhart, and Cheryl Bentley are residents of Georgia who entered The Lucky Case Game via text message, paid the 99 cent fee, and failed to win a prize. (*Id.* ¶¶ 5-6.) They now seek relief

under the UCL, Massachusetts contract law, and Massachusetts tort law. (*Id.* ¶¶ 38-50.) Defendants now move to dismiss these claims.

C. *Cunningham v. Endemol USA, Inc.*: You v. 100

*1 vs. 100* is a game show broadcast since 2006 by Defendant NBC Universal, Inc. (Compl. ¶ 13.) During each airing of the show, viewers are invited to play the You vs. 100 game (*Id.* ¶ 14.) Viewers are asked a simple trivia question and presented with three possible answers; they may then submit their answer in hopes of winning a prize. (*Id.*) They may do so by sending a text message with their answer to 29292 or by registering online on the program's website. (*Id.* ¶¶ 15, 16.) Although entering online is free, entering by text message costs 99 cents in addition to the standard text messaging fees charged by viewers' wireless carriers. (*Id.*) Viewers have 40 minutes to enter after the question is posed. (*Id.* ¶ 20.) The winner is chosen at random from the correct guesses received. (*Id.* ¶ 18.) *1 vs. 100* is produced in California. (*Id.* ¶ 15.) The prize drawing takes place, at least in part, in New York. (*Id.* ¶¶ 16, 18, 19.)

Plaintiff Cynthia Cunningham is a resident of Georgia who entered the You vs. 100 game via text message, paid the 99 cent fee, and failed to win a prize. (*Id.* ¶¶ 5-6.) She seeks relief under the UCL. (*Id.* ¶¶ 35-37.) Defendants now move to dismiss her claim.

D. *Bentley v. NBC Universal, Inc.*: Get Rich With Trump

*The Apprentice* is a television show in which contestants compete for an apprenticeship with Donald Trump. (Compl. ¶ 15.) It has been broadcast since 2004 by Defendant NBC Universal, Inc. (*Id.*) Since 2006, during each airing of the show, viewers have been invited to "Get Rich With Trump." (*Id.* ¶ 16.) This involves submitting their guess as to which contestant will be eliminated during that evening's episode. (*Id.*). They may do so by sending a text message with their answer to 51515 or by registering online on the program's website. (*Id.* ¶ 17, 18.) Viewers have 40 minutes to enter once the announcement is made. (*Id.* ¶

22.)  Although entering online is free, entering by text message costs 99 cents in addition to the standard text messaging fees charged by viewers' wireless carriers. (*Id.*) The winner is chosen at random from the all entries received.  (*Id.*)  *The Apprentice* is produced in California.  (*Id.* ¶ 15.)  The prize drawing takes place in Massachusetts.  (*Id.* ¶¶ 17, 18, 20, 21.)

Plaintiffs Cheryl Bentley, Karen Herbert, and Jodi Eberhart are residents of Georgia who entered the Get Rich With Trump game via text message, paid the 99 cent fee, and failed to win a prize.  (*Id.* ¶¶ 5-6.)  They now seek relief under the UCL and Massachusetts tort law.  (*Id.*  ¶¶ 38-50.)  Defendants now move to dismiss these claims.

## II.  Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court will not dismiss claims for relief unless the plaintiff cannot prove any set of facts in support of the claims that would entitle him to relief. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir. 2002); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).  All material factual allegations in the complaint are assumed to be true and construed in the light most favorable to the plaintiff.  *Nursing Home Pension Fund, Local 144 v. Oracle Corp.,* 380 F.3d 1226, 1229 (9th Cir. 2004) ("The general rule for 12(b)(6) motions is that allegations of material fact made in the complaint should be taken as true and construed in the light most favorable to the plaintiff.") (citing *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000)).  However, the Court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994) (internal citations omitted)*.*

In ruling on a 12(b)(6) motion, a court generally cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  *See, e.g., Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005).  A court may, however, consider exhibits submitted with the complaint.[1]  *Id.*

### III.  Discussion

A.  Plaintiffs' First Claims for Relief: Unfair Competition

Defendants move to dismiss Plaintiffs' first claims for relief, brought under California's Unfair Competition Law ("UCL"). CAL. BUS. AND PROF. CODE §17200 *et seq.*  Section 17200 prohibits acts of unfair competition, including "any [1] unlawful, [2] unfair or [3] fraudulent business practice."  Unlawful practices are any activities that are forbidden by law. *Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1292 (1992).  Here, Plaintiffs allege that Defendants violated California Penal Code §319 by running an illegal lottery; this is the "unlawful practice" for which they seek remedy under §17200.

Defendants argue that Plaintiffs fail to state a claim for three reasons: first, American Idol Challenge, the Lucky Case Game, You vs. 100, and Get Rich with Trump (collectively, "the Games") are not illegal lotteries under California Penal Code §319;[2] second, Plaintiffs lack standing to pursue relief under the UCL, and; third, the doctrine of *in pari delicto* bars their claims.  The Court considers each of these arguments in turn.

1.  Illegal Lottery

---

[1]Plaintiffs and Defendants have each submitted requests for judicial notice in connection with the instant motion.  As the Court has found it unnecessary to rely on any of the information found within these requests, it denies the requests.

[2]Plaintiffs' Complaints engendered some confusion by referencing laws of states other than California in connection with their claims for relief under the UCL.  Plaintiffs now submit that their UCL claims are premised on California law only.  (*E.g. Herbert* Opp'n at 3 n.5.)  The Court proceeds here accordingly.

Defendants first argue that are not illegal lotteries under California law because they provide free alternative methods of entry.  Consequently, Defendants argue that Plaintiffs' UCL claims, predicated on violation of the lottery law, must fail as a matter of law.  The Court disagrees.

Article IV §19 of the California Constitution prohibits lotteries (with the notable exception of the official state lottery).[3]  State law defines a lottery as:

> any scheme for the disposal of property by chance, among persons who have paid or promised to pay any valuable consideration for the chance of obtaining such property . . . upon any agreement, understanding or expectation that it is to be distributed or disposed of by lot or chance.

CAL. PEN. CODE §319.  The essential elements of a lottery, therefore, are *chance*, *consideration*, and the *prize*.[4]  *People v. Cardas*, 137 Cal. App. Supp. 788, 790 (1933); *Cal. Gasoline Retailers v. Regal Petroleum Corp.*, 50 Cal. 2d 844, 853-54 (1958). If any one of the three elements is missing, the game or scheme at issue is

---

[3]This reflects a long-standing public policy against lotteries.  *See, e.g., Phalen v. Virginia*, 49 U.S. 163, 168 (1850) (describing lotteries as a "wide-spread pestilence" that "infests the whole community:  it enters every dwelling; it reaches every class; it preys upon the hard earnings of the poor; it plunders the ignorant and simple.").  The chief evil to be remedied by anti-lottery laws is "to prevent people from giving up money or money's worth in the hope that chance will make their investment profitable."  Charles Pickett, *Contests and Lottery Laws*, 45 HARV. L. REV. 1196, 1206 n.37 (1931-1932).

[4]The three element definition of lotteries is firmly established.  *See, e.g., Lottery: What Constitutes a Lottery?*, 2 CAL. L. REV. 448, 448 (1913-1914) ("The authorities agree that in order to constitute a lottery there must be three elements, namely, a consideration, the element of chance, and a prize."); *FCC Attacks Radio Give-Away Programs*, 1 STAN. L. REV. 475, 482 (1948-1949) ("There is uniform agreement that three elements are necessary to constitute a lottery: (1) prize, (2) chance, and (3) consideration."); Lawrence H. Jacobson, *The California Lottery Law: Don't Take a Chance*, 48 CAL. STATE BAR J. 58 (1973) (same).  Notwithstanding this well-worn definition, the Court is mindful of Chief Justice Warren's pertinent admonition: "So varied have been the techniques used by promoters to conceal the joint factors of prize, chance, and consideration, and so clever have they been in applying these techniques to feigned as well as legitimate business activities, that it has often been difficult to apply the decision of one case to the facts of another."  *FCC v. Am. Broad. Co.*, 347 U.S. 284, 293 (U.S. 1954) (finding that listening to a radio program is not consideration).

1    not a lottery. *Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1403 (1997).  Conducting

2    a lottery or selling lottery tickets is a misdemeanor under state law. CAL. PEN.

3    CODE §§ 320, 321.

4         Defendants concede that the elements of chance and prize are met.  They

5    argue instead that there is an absence of consideration:  because they offer

6    viewers a free alternative method of entry, (that is, because viewers can enter

7    online for free, rather than pay 99 cents per text message), there is no

8    consideration and thus no lottery.  Plaintiffs counter that because some viewers

9    paid for the privilege of entering, the game is a lottery as to them,

10   notwithstanding that other viewers entered for free.[5]

11        Summarizing the "implicit holdings" of the leading lottery cases

12   specifically on the question of consideration, the court in *People v. Shira*

13   explained,

14            in order for a promotional giveaway scheme to be *legal any* and *all* persons

15            must be given a ticket free of charge and without any of them paying for

16            the opportunity of a chance to win a prize.  Conversely, a promotional

17            scheme is *illegal* where *any* and *all* persons *cannot* participate in a chance

18            for the prize and *some* of the participants who want a chance to win must

19            pay for it.

20   62 Cal. App. 3d 442, 459 (1976). The critical factual distinction between cases in

21   which a lottery was not found (*Cardas, Carpenter,* and *Regal*) and those in which

22   a lottery was found (*Shira*) is that the former "involved promotional schemes by

23   using prize tickets to increase the purchases of legitimate goods and services in

24   the free market place" whereas in the latter "the game itself is the product being

25   _____

26        [5]Plaintiffs argue in opposition to Defendants' Motions that the Games violate California

27   Business and Professions Code §17539.5(d), which states: "It shall be unlawful for any person to
     solicit or sell an information-access service in any manner related to a sweepstakes."  The Court

28   declines to consider this argument for the purposes of this motion to dismiss, as Plaintiffs have
     made no such allegations in their Complaints.

merchandized." *Id*; *see also Haskell*, 965 F. Supp at 1404 (stating the broad principle that "business promotions are not lotteries so long as tickets to enter are not conditioned upon a purchase." ).   The presence of a free alternative method of entry in the leading cases made it clear that the money customers paid was for the products purchased (gasoline or movie tickets), and not for the chance of winning a prize.

The relevant question here, therefore, is whether the Games were nothing more than "organized scheme[s] of chance,"[6] in which payment was induced by the chance of winning a prize.  The relevant question is not, as Defendants contend, whether some people could enter for free.[7]  In *Regal*, *Cardas*, and *Carpenter*, the courts concluded that those who made payments purchased something of equivalent value.  The indiscriminate distribution of tickets to purchasers and non-purchasers alike was evidence thereof.  Here, however, Defendants' offers of free alternative methods of entry do not alter the basic fact that viewers who sent in text messages paid only for the privilege of entering the Games.  They received nothing of equivalent economic value in return.  Accordingly, the Court finds that Plaintiffs have sufficiently alleged that Defendants conducted illegal lotteries as defined by California law.

## 2.  Standing

Defendants next argue that Plaintiffs have no standing to bring suit under the UCL because they are not California residents and their injuries occurred

---

[6]*See* Pickett, *supra* note 3, at 1198 ("[T]he organized lottery is admittedly a self-contained gambling enterprise which creates no wealth, except for its operator, and performs no apparent economic function.  The contest, on the contrary, is a device for fostering the sales of a legitimate business . . . presumably fulfill[ing] a purpose which is as economically desirable as any other method of advertising.")

[7]Plaintiffs and Defendants have argued extensively in their briefs over the adequacy of the disclosure of the free alternative method of entry.  Although this is an interesting issue, it is not one arising from Plaintiffs' Complaints, which limit themselves to violation of California Penal Code §319 as the basis for their UCL claims.

outside of California (in their home state of Georgia).  The California state legislature did not intend the UCL to regulate conduct unconnected with California.  *Norwest Mortgage v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999); *Standfacts Credit Servs. v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141, 1147-48 (C.D. Cal 2005) (holding that the UCL is inapplicable where plaintiff is a non-resident and wrongful conduct did not occur in California).  Thus, the court in *Norwest* concluded that where the alleged wrongful conduct took place outside of California and harmed non-California residents, the UCL was unavailable.  *Norwest*, 72 Cal. App. 4th at 225-27.

Plaintiffs' Complaints allege that the Games were produced in, and viewers were invited to enter from, California.  It follows from these factual allegations, which the Court must accept as true at this stage, that the alleged wrongful conduct (that of conducting lotteries) took place in California.  Even though Plaintiffs are nonresidents, the allegation that the wrongful conduct took place in California is sufficient to state a claim under the UCL.  *See id.* at 223 n.13.  Thus, Plaintiffs' Complaints withstand Defendants' Motion to Dismiss.

## 3.  *In Pari Delicto*

Finally, Defendants argue that Plaintiffs' cases must be dismissed because of the doctrine of *in pari delicto*, which holds that "a plaintiff who has participated in wrongdoing may not recover damages from the wrongdoing."  BLACK'S LAW DICTIONARY 806 (8th ed. 2004).  California courts, citing the long-standing public policy against gambling, have thus refused to adjudicate disputes arising out of "gambling contracts or transactions."  *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 477 (refusing to entertain a tort suit arising out of an incident of cheating at cards).

In the instant case, however, Defendants and Plaintiffs are not *in pari delicto*, or "equally at fault."  BLACK'S LAW DICTIONARY 806.  Defendants are alleged to have violated the UCL by conducting lotteries, an activity expressly

1   forbidden by California law.  There is no equivalent legal wrong under California

2   law of playing a lottery.  Under state law, and as alleged in the Complaints,

3   Defendants may be *in delicto* but there is no *pari*: Plaintiffs have committed no

4   legal wrong by sending in their text message entries.  Nor is this a case, like the

5   long line of California cases establishing the doctrine, in which a wronged player

6   seeks to recover a gaming debt.  Instead, Plaintiffs seek declaratory judgments

7   that the Games are illegal lotteries, injunctive relief against the continued

8   operation of the Games, and restitution for amounts unlawfully collected.

9   Rather than asking the Court to accept the legitimacy of a gaming activity by

10  deciding a dispute arising out of the activity, Plaintiffs seek to stop the Games

11  themselves.  Accordingly, the Court finds that the doctrine of *in pari delicto* does

12  not bar Plaintiffs' claims.

13  B.  Defendants' Motions to Strike

14       Defendants ask that the Court strike Plaintiffs' prayers for restitution under

15  the UCL.  They argue that Plaintiffs are not entitled to restitution because they did

16  not pay Defendants directly: they paid their wireless carriers.  Motions to strike

17  are generally disfavored, and are appropriate only when the movant can show that

18  the challenged matter has no bearing on the subject matter of the litigation and

19  that its inclusion will prejudice the defendants.  *See* Fed. R. Civ. P. 12(f); JAMES

20  WM. MOORE, 2 MOORE'S FED. PRAC. § 12.37[1] (3d ed. Matthew Bender).

21  Motion to strike requests for certain types of relief, such as punitive damages,

22  may be stricken if "such relief is not recoverable under the applicable law."

23  MOORE'S §12.37[1]; *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479 n.34 (C.D.

24  Cal. 1996).

25       Here, the restitution Plaintiffs seek is recoverable under the facts alleged.

26  All the UCL requires is that "the plaintiff must be a person in interest (that is, the

27  plaintiff must have had an ownership interest in the money or property sought to

28  be recovered), and the defendant must have acquired the plaintiff's money or

property by means of unfair competition." *Shersher v. Superior Court*, 154 Cal. App. 4th 1491, *2 (2007) (citations omitted).  Plaintiffs here have alleged that they paid money to enter the Games, that the Games constitute unfair business practices, and Defendants acquired their money by means of that practice.  These allegations support claims for restitution.  Accordingly, the Court DENIES Defendants' motions to strike.

C. *Couch*: Connecticut Law Claim for Relief

Plaintiff Couch alleges that at least some of the administration of American Idol Challenge took place in Connecticut.  She therefore seeks to hold Defendants liable under Connecticut law governing the recovery of money lost in gaming. Conn. Gen. Stat. §52-554.  Section 52-554 provides:

> Any person who, by playing at any game . . . loses the sum or value of one dollar in the whole . . . may, within three months next following, recover from the winner the money or the value of the goods so lost and paid or delivered, with costs of suit in a civil action, without setting forth the special matter in his complaint.

First, Defendants argue that Plaintiff has not lost one dollar, but only 99 cents, and therefore has failed to state a claim.  Plaintiff's Complaint, however, alleges that she "paid money for gaming wagers and lost at least one dollar" in Defendants' game.  (Compl. ¶ 45.)  This is sufficient to meet the minimum loss requirement.

Second, Defendant argues that American Idol Challenge is not a game subject to the §52-554 because it is a "promotional drawing for a prize or prizes, conducted for advertising purposes . . . wherein members of the general public may participate without making any purchase or otherwise paying or risking credit, money, or any other tangible thing of value."  Conn. Gen. Stat. §53-278g(a).  However, whether Defendants conduct the game for "advertising purposes" is a factual question that cannot be resolved on a motion to dismiss.

Finally, Defendants argue Plaintiff has failed to state a claim because she does not allege that her loss occurred within three months of filing suit, as required by the statute.  A court may not grant a 12(b)(6) motion to dismiss a complaint on statute of limitations grounds "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995).  Defendants do not assert that Plaintiff cannot prove that she participated in the game within the three months prior to filing her suit, only that she did not allege when she played the game.  This is not sufficient to dismiss the claim on statute of limitations grounds.

D. *Bentley* and *Herbert*:  Massachusetts Law Claims for Relief

The plaintiffs in *Bentley* and *Herbert* include claims for relief under Massachusetts contract and tort law.  Defendants move to dismiss these claims because they are based on Plaintiffs' purportedly flawed allegation that Get Rich With Trump and The Lucky Case Game are illegal lotteries under Massachusetts law.[8]  The parties agree that under Massachusetts law, a lottery consists of the three elements of "payment of a price, a prize, and some element of chance." *Mobil Oil Corp. v. Attorney Gen.*, 361 Mass. 401, 406 (1972).  Price is more than technical consideration, it must be something of value. *Id.*  At least in part, the price paid must be for the chance of winning; "the indirect advantage to the one conducting a game at his place of business is not in itself a price paid by participants." *Id.* (citations omitted).  A recent Massachusetts appellate case held that "[t]he essential test . . . is 'not whether it was possible to win without paying,' but whether those who chose to pay 'were paying in part for the chance

---

[8]Mass. Ann. Laws ch. 271 §7 provides: "Whoever sets up or promotes a lottery for money or other property of value . . . with intent to make the disposal thereof dependent upon or connected with chance by lot . . . whereby such chance . . . is made an additional inducement to the disposal or sale of said property . . . shall be punished . . . ."

1  of a prize.'"  *Commonwealth v. Webb*, 68 Mass. App. Ct. 167, 171, *review*

2  *granted*, 449 Mass. 1101 (2007) (citing *Commonwealth v. Wall*, 295 Mass. 70, 73

3  (1936).  Here, based on the facts alleged by Plaintiffs, it is clear that viewers who

4  entered via text message and paid the fee "chose to pay . . . in part for the chance

5  of a prize."  Accordingly, Defendants' motion to dismiss Plaintiffs'

6  Massachusetts state law causes of action is DENIED.

7

8  **IV.  Conclusion**

9  Defendants' Motions are DENIED.

10

11  **IT IS SO ORDERED.**

12

13  November 30, 2007          _____

14                             FLORENCE-MARIE COOPER, JUDGE
                               UNITED STATES DISTRICT COURT