JEFF S. WESTERMAN (SBN 94559)
jwesterman@milberg.com
MICHIYO MICHELLE FURUKAWA (SBN 234121)
mfurukawa@milberg.com
**MILBERG LLP**
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile:  (213) 617-1975

MICHAEL C. SPENCER (SBN 79349)
mspencer@milberg.com
WILLIAM B. SCOVILLE, JR.
wscoville@milberg.com
**MILBERG LLP**
One Pennsylvania Plaza, 49th Floor
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

*Lead Counsel for Plaintiffs*

[Additional Counsel appear on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KAREN HERBERT, JUDY SCHENKER, JODI EBERHART, CHERYL BENTLEY, and all others similarly situated, | Case No. 2:07-cv-03537-JHN-VBKx |
| Plaintiffs, | PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMBINED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS |
| vs. | |
| ENDEMOL USA, INC., NBC UNIVERSAL, INC., VERISIGN, INC., M-QUBE, INC. and DON JAGODA ASSOCIATES, INC., | DATE:        September 19, 2011<br>TIME:        2:00 P.M.<br>CTRM.:       790<br>JUDGE:       Hon. Jacqueline H. Nguyen |
| Defendants. | Complaint Filed: May 31, 2007 |

**[Caption Continued on the Following Page]**

| | |
|---|---|
| 1 | DARLENE COUCH, and all others<br>similarly situated,                    )    Case No. CV-07-03916-JHN (VBKx) |
| 2 | )<br>                              Plaintiff,    ) |
| 3 |         vs.                      ) |
| 4 | TELESCOPE INC., PROJECT<br>SUPPORT TEAM, INC., AMERICAN    ) |
| 5 | IDOL PRODUCTIONS, INC.,           )    CTRM:        750<br>FREMANTLEMEDIA NORTH          )    JUDGE:       Hon. Jacqueline H. |
| 6 | AMERICA, INC., 19                 )                 Nguyen<br>ENTERTAINMENT, INC., and FOX    ) |
| 7 | BROADCASTING COMPANY,             )    Complaint Filed: June 15, 2007<br>                              Defendants.    ) |
| 8 | ) |
| 9 | ) |

1    DARLENE COUCH, and all others similarly situated,

                    Plaintiff,

        vs.

TELESCOPE INC., PROJECT SUPPORT TEAM, INC., AMERICAN IDOL PRODUCTIONS, INC., FREMANTLEMEDIA NORTH AMERICA, INC., 19 ENTERTAINMENT, INC., and FOX BROADCASTING COMPANY,

                    Defendants.

Case No. CV-07-03916-JHN (VBKx)

CTRM:        750
JUDGE:       Hon. Jacqueline H. Nguyen

Complaint Filed: June 15, 2007

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................... 1

II.   LITIGATION HISTORY ......................................................................... 2

      A.    The Parties Engaged in Active, Complex Litigation ........................ 2

      B.    The Parties' Mediation Efforts .......................................................... 3

III.  SETTLEMENT SUMMARY ................................................................... 4

IV.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY
      APPROVAL ............................................................................................. 6

      A.    Standards for Preliminary Approval .................................................. 6

      B.    The Proposed Settlements Merit Preliminary Approval .................... 7

            1.    Plaintiffs Engaged in Sufficient Pretrial Discovery and
                  Proceedings to Evaluate the Propriety of Settlement ............... 8

            2.    The Strength of Plaintiffs' Cases, When Balanced
                  Against the Risk, Expense, Complexity and Likely
                  Duration of Further Litigation, Supports Approval of the
                  Settlements ............................................................................... 8

            3.    The Recommendations of Experienced Counsel After
                  Extensive Litigation and Arm's-Length Settlement
                  Negotiations Favor the Approval of the Settlements .............. 10

V.    CERTIFICATION OF THE SETTLEMENT CLASSES IS PROPER ........ 11

      A.    The Settlement Classes Are so Numerous that Joinder of All
            Settlement Class Members Is Impracticable ................................... 11

      B.    Common Questions of Law and Fact Exist ...................................... 12

      C.    Plaintiffs' Claims Are Typical of Those of the Settlement
            Classes ............................................................................................. 14

      D.    The Adequacy Requirement Is Satisfied ......................................... 15

      E.    The Proposed Settlement Classes Satisfies Rule 23(b)(3) .............. 16

            1.    Common Questions of Law and Fact Predominate ................ 16

            2.    A Class Action Is Superior to Other Available Methods
                  for Resolving this Controversy .............................................. 17

VI.   THE PROPOSED NOTICE IS ADEQUATE ........................................... 18

      A.    Rule 23 Notice Satisfies All Applicable Requirements .................... 18

VII.  PROPOSED SCHEDULE OF EVENTS ................................................. 22

VIII.  CONCLUSION ............................................................................................ 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

## **TABLE OF AUTHORITIES**

3

**Page(s)**

4

**FEDERAL CASES**

5

*Amchem Prods. v. Windsor*,
6
    521 U.S. 591 (1977) ...................................................................................... 11

7

*Applied Micro Circuits*, No. 01CV0649-K, 2003 U.S. Dist. LEXIS 14492,
    at *7 (S.D. Cal. July 10, 2003)..................................................................... 11
8

9

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...................................................................... 13
10

11

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ........................................................................ 9
12

13

*Couch v. Telescope, Inc.*,
    611 F.3d 629 (9th Cir. 2010) ................................................................ passim
14

15

*DJ Orthopedics, Inc. Secs. Litig.*, No. 01-CV-2238-K (RBB), 2003 U.S.
    Dist. LEXIS 21534, at *29 (S.D. Cal. Nov. 16, 2003) ................................... 17

16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................. passim
17

18

*Hernandez v. Alexander*,
    152 F.R.D. 192 (D. Nev. 1993)................................................................... 16
19

20

*In re First Capital Holdings Corp. Fin. Prods. Secs. Litig.*,
    MDL No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992) ........ 10
21

22

*In re Heritage Bond Litig.*,
    MDL No. 02-ML-1475 DT, 2004 U.S. Dist. LEXIS 15386 (C.D. Cal.
    July 12, 2004)................................................................................... 13, 17
23

24

*In re Mego Fin. Corp. Secs. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................ 9
25

26

*In re Potash Antitrust Litig.*,
    159 F.R.D. 682 (D. Minn. 1995)................................................................. 16
27

28

*In re THQ, Inc. Secs. Litig.*,
  No. CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753 (C.D. Cal.
  Mar. 22, 2002) .................................................................................. 17

*In re VeriSign, Inc. Secs. Litig.*,
  No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13,
  2005) ................................................................................................ 11

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*,
  720 F. Supp. 1379 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v.
  Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................................... 10

*Jermyn v. Best Buy Stores, L.P.*,
  No. 08 Civ. 00214, 2010 U.S. Dist. LEXIS 130682 (S.D.N.Y. Dec. 6,
  2010) ................................................................................................ 21

*Knapp v. Gomez*,
  No. 87-0067-H(M), 1991 U.S. Dist. LEXIS 11012 (S.D. Cal. June 25,
  1991) ................................................................................................ 13

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ........................................................... 15

*Lubin v. Sybedon Corp.*,
  688 F. Supp. 1425 (S.D. Cal. 1988) ................................................. 15

*Miletak v. Allstate Ins. Co.*,
  2010 U.S. Dist. LEXIS 26913 (N.D. Cal. Mar. 5, 2010) .................. 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..................................................... 10

*Norris-Wilson v. Delta-T Group, Inc.*,
  270 F.R.D. 596 (S.D. Cal. 2010) ...................................................... 17

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ......................................................... 6, 7

*Rodriguez v. Carlson*,
  166 F.R.D. 465 (E.D. Wash. 1996) .................................................. 12

*Schwartz v. Harp*,
  108 F.R.D. 279 (C.D. Cal. 1985) ..................................................... 12

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................... 9, 14

*Stolz v. United Bhd. of Carpenters & Joiners, Local Union No. 971*,
   620 F. Supp. 396 (D. Nev. 1985) ..................................................... 14

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ............................................... 7, 8, 9, 18

*True v. Am. Honda Motor Co.*,
   No. EDCV 07-287-VAP (OPx), 2009 U.S. Dist. LEXIS 29814 at *13
   (C.D. Cal. Mar. 25, 2009) .................................................................. 15

*Util. Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) ............................................................... 6

*Wehner v. Syntex Corp.*,
   117 F.R.D. 641 (N.D. Cal. 1987) ...................................................... 12

*Yamner v. Boich*,
   No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849 (N.D. Cal. Sept. 15,
   1994) ................................................................................................... 17

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ........................................................... 17

**DOCKETED CASE**

*Clesceri v. Beach City Investigations & Protective Servs.*,
   No. CV-10-3873-JST ......................................................................... 15

**FEDERAL STATUTES**

28 U.S.C. § 1292(b) .............................................................................. 3

**STATE STATUTES**

Business & Professions Code § 17200 *et seq.* ....................................... 2

California Penal Code § 319 .................................................................... 2

**RULES**

Fed. R. Civ. P. 23 .......................................................................... passim

1

**OTHER AUTHORITIES**

2  1 Herbert Newberg, Newberg on Class Actions, § 3.05 at 3-25 (3d ed. 1995) ..... 12

3  *Manual for Complex Litigation 4th* at § 21.311 .................................................... 19

4  *Manual for Complex Litigation* § 13.14, at 173 (4th ed. 2004) .......................... 6, 7

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MPA ISO COMBINED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS

1    Plaintiffs Karen Herbert, Judy Schenker, Jodi Eberhart, and Cheryl Bentley
2  (collectively the "Herbert Plaintiffs") and Darlene Couch ("Couch") (together with
3  the Herbert Plaintiffs, the "Plaintiffs") submit this memorandum of points and
4  authorities in support of their combined motion for preliminary approval of the
5  proposed settlements of these matters.

6  **I.   INTRODUCTION**

7    After years of litigation, discovery, and several mediation sessions with the
8  Honorable Edward A. Infante (Ret.), the Parties reached agreements to settle these
9  matters on the terms set forth in the Agreements of Settlement (the
10 "Agreements").[1]  *See* Declaration of Michelle Furukawa in Support of Combined
11 Motion for Preliminary Approval of Settlements ("Furukawa Decl."), Ex. 1 (the
12 "*Herbert* Agreement") and Ex. 2 (the "*Couch* Agreement").  The settlements more
13 than meet the standard for preliminary approval.  The settlements ensure
14 Defendants' continuing abstention from promotion or participation in any form of
15 text-message based lotteries for five years.  Moreover, it reimburses 100% of
16 Settlement Class Members' losses free of any set-offs for claims processing costs
17 or Class Counsel fees, which fees and costs will be paid exclusively by
18 Defendants.  The settlements provide a vigorous notice program that will inform
19 Settlement Class Members of their rights and will provide several convenient
20 methods for them to submit claims.  These proposed resolutions provide
21 immediate, tangible relief to Settlement Class Members instead of years of
22 additional litigation and appeals.  The settlements are the result of eight months of
23 extensive arm's-length negotiations between the Parties, and the substantial
24 assistance of Judge Infante, a former Chief Magistrate Judge of the U.S. District
25 Court, Northern District of California, and a respected mediator with significant
26 experience in large, complex class actions.

27
---

[1]   All capitalized terms not defined herein shall have the same meanings as set
28 forth in the Agreements.

The proposed orders submitted herewith (1) grant preliminary approval of the proposed settlements; (2) approve the Parties' proposed form and methods for giving the Settlement Class notice of the pendency and the settlement of these Actions; (3) certify classes for the purpose of settlement only; (4) direct the manner for providing notice to Settlement Class Members; and (5) set a hearing date for final approval of these settlements and for an award of attorneys' fees and time and expense incentive awards for the proposed Settlement Class Representatives. *See* Exhibit A (Preliminary Approval Order) to Furukawa Decl. Exs. 1 and 2. Lead counsel, with many years of experience litigating large class actions on behalf of consumers, believes this is a superlative resolution for Settlement Class Members and accordingly requests entry of preliminary approval so that Settlement Class Members can be reimbursed.

## II.   LITIGATION HISTORY

### A.   The Parties Engaged in Active, Complex Litigation

The Herbert Plaintiffs filed their complaint on May 31, 2007 and Couch filed her complaint on June 15, 2007, as two of several related class actions challenging the proliferation of lotteries that were promoted by entertainment, telecommunications, and advertising enterprises during the broadcast of popular prime-time television shows. Plaintiffs alleged that the lotteries, including the Lucky Case Game and American Idol Challenge at issue in these Actions, were illegal under California Penal Code § 319 and California's Unfair Competition Law (Business & Professions Code section 17200 *et seq.*).

On August 15, 2007, defendants Endemol USA, Inc., NBC Universal, Inc., VeriSign, Inc., M-Qube, Inc. and Don Jagoda Associates, Inc. (collectively, the "Herbert Defendants") moved this Court to dismiss the complaint in *Herbert*. *Herbert* ECF No. 24. On August 22, 2007, defendants 19 Entertainment Inc., Fox Broadcasting Company, Telescope Inc., Project Support Team Inc., American Idol Productions Inc., and Fremantlemedia North America Inc. (collectively, the

"Couch Defendants") moved this Court to dismiss the *Couch* complaint.[2] *Couch* ECF No. 20. The Court denied the Herbert Defendants' and Couch Defendants' (together, "Defendants") motions on November 30, 2007. *Herbert* ECF No. 38 and *Couch* ECF No. 30 (the "MTD Order").

On January 14, 2008, Defendants moved this Court to certify the MTD Order for immediate appeal. *Herbert* ECF No. 51 and *Couch* ECF No. 35. On March 26, 2008, the Court granted certification under 28 U.S.C. § 1292(b) for the limited purpose of proposing two state law issues to be certified to the California Supreme Court. *Herbert* ECF No. 69 and *Couch* ECF No. 53. On April 9, 2008, Defendants petitioned the Ninth Circuit Court of Appeals for permission to appeal under Section 1292(b), which that Court granted on August 15, 2008 in *Couch* and on August 18, 2008 in *Herbert*. *See Herbert v. Endemol USA, Inc.*, No. 08-56360 (9th Cir.) and *Couch v. Telescope Inc.*, No. 08-56357 (9th Cir.). The Parties engaged in motion practice before both the motion and merits panels of the Ninth Circuit involving the propriety of 1292(b) certification. On July 8, 2010, the merits panel vacated the order granting permission to appeal, dismissed the appeal for lack of jurisdiction, and remanded the case to this Court. *See Couch v. Telescope, Inc.*, 611 F.3d 629, 635 (9th Cir. 2010).

Subsequent to the remand, and pursuant to this Court's November 1, 2010 case management order, the Parties, during the course of 2011, engaged in both class and merits discovery and briefed the pending motions for class certification. The evidence cited in Plaintiffs' class certification briefing confirms Plaintiffs' efforts to prosecute these Actions vigorously on the Class' behalf.

**B.    The Parties' Mediation Efforts**

In late 2010, after years of litigation at the district and appellate levels, the Parties agreed to participate in voluntary mediation in an effort to resolve these

---

[2] CKX Inc. and Fox Interactive Media Inc. also moved to dismiss the *Couch* complaint, but have since been dismissed from the action. *See Couch* ECF No. 92.

1  lawsuits.   The Parties engaged the Honorable Edward Infante to assist in those
2  efforts and, as detailed below, participated in two formal, face-to-face mediation
3  sessions, as well as numerous mediator-driven settlement conference calls, both
4  with and without Judge Infante's participation, and informal discussions among
5  and between the Parties.   The settlement discussions were rigorous and hard-
6  fought, spanning eight months.

7       After the December 2010 mediation, the Parties continued to litigate while
8  also pursuing informal settlement negotiations through discussions between and
9  among the Parties.  After the Herbert Plaintiffs' motion for class certification was
10  fully briefed and Couch filed her motion for class certification, the Parties
11  participated in a second formal mediation on July 13, 2011.  This resulted in the
12  Herbert parties' agreement to a term sheet that provides the basis for the proposed
13  settlement in that action.  The Couch parties came to an agreement in late August
14  2011, after a separate mediation involving only the defendants and their insurers in
15  that action.  The Parties continued to set up the details of implementation of the
16  settlements since reaching agreements in principle, including jointly selecting a
17  Claims Administrator to administer notice for both Actions.   After exchanging
18  numerous drafts, reworking terms and negotiating the precise language governing
19  the logistics of the settlements, the Parties executed the Agreements of Settlement
20  submitted herewith.  *See* Furukawa Decl. Ex. 1 (*Herbert* Agreement) and Ex. 2
21  (*Couch* Agreement).

22  **III.   SETTLEMENT SUMMARY**

23       As detailed in the Agreements and in the Class Notice, the proposed
24  settlements provide full restitution to any and all Settlement Class Members who
25  submit valid Claims during the Claims Period.  This extraordinary result for the
26  Settlement Classes results in Claimants' recovery of 100% of premium surcharges
27  that they paid to enter the Lucky Case Game or American Idol Challenge.   In
28

1   addition, Settlement Class Members shall not pay or bear any claims processing

2   fees or costs.

3        As set forth in the Agreements, one of the key achievements of the proposed

4   settlements is the consent of defendants Endemol USA, Inc., NBC Universal

5   Media LLC, Verisign, Inc., Don Jagoda Associates, 19 Entertainment Inc., Fox

6   Broadcasting Company, Telescope Inc., Project Support Team Inc., American Idol

7   Productions Inc., and Fremantlemedia North America Inc. (collectively, the

8   "Injunction Defendants") to the entry of an injunction preventing them from

9   participating in any lottery such as the Lucky Case Game and American Idol

10  Challenge for a period of five years following the Final Approval Date.

11  Specifically, the proposed final order would enjoin the Injunction Defendants from

12  creating, sponsoring or operating any contest or sweepstakes, for which entrants

13  are offered the possibility of winning a prize, where people who enter via premium

14  text message do not receive something of comparable value to the premium text

15  message charge in addition to the entry.   This ensures that one of the primary

16  benefits achieved by these litigations – the termination of the Lucky Case Game

17  and American Idol Challenge – will long outlive these Actions.[3]

18       Additionally, every Settlement Class Member who submits a valid Claim

19  during the Claims Period will be reimbursed for the full amount(s) of any premium

20  text message charges paid by that Settlement Class Member to a cellular carrier to

21  enter the Game.   Claimants will have a choice of submitting Claims by mail, by

22  telephone, or by filling out an online claims form.   As an additional benefit to the

23  Settlement Class, Defendants have agreed to pay, and Plaintiffs' Counsel will

24  request the Court to approve, reimbursement of Plaintiffs' Counsel's attorneys'

25  fees and expenses in the amount of $4,750,000 for prosecuting the *Herbert* Action

26   

27  [3]   Following the District Court's November 30, 2007 denial of Defendants' motions to dismiss these Actions, the network programs that included viewer lotteries withered away, even though they had been proliferating up to that point and were drawing large viewership and substantial revenues.

28   

and $485,667 for prosecuting the *Couch* Action.  Thus Settlement Class Members' 100% recovery will not be affected by any of the charges that in many class actions are deducted on a pro rata basis from class recoveries.  The provisions regarding Defendants' payment of Plaintiffs' attorneys' fees were negotiated and agreed to only after the Parties reached agreements in principle on the other non-fee terms of the settlements benefitting the Settlement Classes and with Judge Infante's assistance.  Thus, such negotiations were structured to avoid potential conflicts.

**IV.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

As a matter of public policy, settlement is a strongly favored method for resolving disputes.   *See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is especially true in complex class actions such as this one.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

**A.    Standards for Preliminary Approval**

Federal Rule of Civil Procedure 23(e) requires judicial approval for the compromise of claims brought on a class basis.  At the final approval hearing, the Court will have before it extensive papers submitted in support of the proposed settlements.  The Court will be asked to make a determination whether the settlements are fair, reasonable and adequate under the circumstances.  At this juncture, however, Plaintiffs request only that the Court grant preliminary approval of the settlements.

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final settlement approval.  *See Manual for Complex Litigation* § 13.14, at 173 (4th ed. 2004) ("First, the [court] reviews the proposal preliminarily to determine

- 6 -

whether it is sufficient to warrant public notice and a hearing. If so, the final decision on approval is made after the hearing.").

To grant preliminary approval, the Court need only conclude settlement of the claims against the Defendants on the agreed-upon terms is within the range of possible approval for the purposes of providing notice and holding a future fairness hearing.

**B.    The Proposed Settlements Merit Preliminary Approval**

The factors courts consider in granting final approval of class action settlements lend support to Plaintiffs' belief that the proposed settlements are within the range of possible approval.  In *Officers for Justice,* the Ninth Circuit set forth the factors the trial court should consider in assessing whether a proposed settlement is fair, reasonable, and adequate:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. The district court's ultimate determination will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id*. at 625 (citations omitted); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

### 1. Plaintiffs Engaged in Sufficient Pretrial Discovery and Proceedings to Evaluate the Propriety of Settlement

Given the discovery in these cases, counsel's knowledge and the proceedings themselves, Plaintiffs reached a stage where their counsel can make intelligent evaluations of the Actions and the propriety of these settlements. The stage of the proceedings is one of the factors courts consider in determining the fairness, reasonableness and adequacy of a settlement. *Hanlon*, 150 F.3d at 1026; *Torrisi*, 8 F.3d at 1375. Counsel conducted significant discovery and investigation on the matters alleged.

Plaintiffs, through their counsel, conducted extensive research, discovery and investigation during the prosecution of these Actions, including inspection and analysis of thousands of pages of documents and expert witness consultation.

Settlement discussions began only after Plaintiffs' Counsel thoroughly evaluated the risks and benefits of continued litigation of these Actions. After successfully opposing the motions to dismiss and litigating these matters before the Ninth Circuit, Plaintiffs' Counsel understood the strengths of Plaintiffs' cases and had sufficient information to support a decision about the fairness of the settlements.

### 2. The Strength of Plaintiffs' Cases, When Balanced Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, Support Approval of the Settlements

The proposed settlements are well within the range of possible approval. The settlements provide substantial benefits to the Settlement Class Members, including full reimbursement of premium text message charges paid, and orders enjoining the Injunction Defendants from participating in text-message based lotteries for five years. The settlements represent very favorable resolutions of the Actions and eliminate the risk the Settlement Classes may recover nothing. Defendants have vigorously disputed the validity of Plaintiffs' claims. Although

Plaintiffs' Counsel believe that the Lucky Case Game and American Idol Challenge constitute clear violations of California's Unfair Competition Law, and that this Court's denial of Defendants' motions to dismiss was correctly decided, Plaintiffs' Counsel recognize that the issue is one of first impression and that there exists the possibility that the Ninth Circuit could reverse should these cases go to trial and judgments for Plaintiffs be entered.  Furthermore, while Plaintiffs believe these cases merit class certification, Plaintiffs' Counsel's belief in these cases does not eliminate the risk that this Court might not certify the classes or could narrow the scope of the classes.  The proposed settlements eliminate the risks associated with continued litigation and eliminate the substantial risk of no recovery after several more years of litigation for Settlement Class Members.

The immediacy and certainty of recovery is a factor for the Court to balance in determining whether the proposed settlements are fair, adequate and reasonable. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). Additionally, and of particular significance herein, the amount offered in settlement is one of the factors to be considered in evaluating the fairness and adequacy of a proposed settlement.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d at  458.  The amount being offered to Settlement Class Members in these Actions is, of course, a particularly compelling factor.  As the Ninth Circuit has noted, "different factors may predominate in different factual contexts."  *Torrisi*, 8 F.3d at 1376 (finding defendant's shaky financial condition predominated over other factors).  In these cases, Plaintiffs submit that Settlement Class Members' certain and immediate recovery of 100% of losses should, even standing alone, warrant approval of the settlements.  As one court in this district held, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."

1   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal.

2   2004) (citations omitted).  Where a settlement, as here, offers not "only a fraction"

3   but instead the maximum amount that could be recovered at trial to any Settlement

4   Class Member submitting a valid Claim, the settlements are fair and adequate

5   based on that factor alone.  Approval of these settlements means a present, tangible

6   recovery for eligible Claimants in the same amount that they could have recovered

7   at trial.

8                **3.    The Recommendations of Experienced Counsel After**
                 **Extensive Litigation and Arm's-Length Settlement**
9                **Negotiations Favor the Approval of the Settlements**

10      Plaintiffs' Counsel, having carefully considered and evaluated, among other

11   things, the relevant legal authorities and evidence to support the claims asserted

12   against Defendants, the likelihood of prevailing on these claims, the risk, expense

13   and duration of continued litigation, and the likely appeals and subsequent

14   proceedings necessary if Plaintiffs did prevail against Defendants at trial, have

15   concluded that the settlements are fair, reasonable, and adequate and in the best

16   interest of the Settlement Classes.  Due to Plaintiffs' Counsel's extensive efforts on

17   the Settlement Classes' behalf and the settlements achieved, Plaintiffs' Counsel

18   provided fair and adequate representation to the Settlement Classes.  Plaintiffs'

19   Counsel have significant experience in complex class action litigation and have

20   negotiated numerous other substantial class action settlements throughout the

21   country.  Where, as here, the settlements are the product of serious, informed, non-

22   collusive negotiations after four years of contentious litigation, significant weight

23   should be attributed to the belief of experienced counsel that settlement is in the

24   best interest of the Settlement Classes.  *See In re First Capital Holdings Corp. Fin.*

25   *Prods. Secs. Litig.*, MDL No. 901, 1992 U.S. Dist. LEXIS 14337, at *12-13 (C.D.

26   Cal. June 10, 1992) (finding belief of counsel that the proposed settlement

27   represented the most beneficial result for class compelling factor in approving

28   settlement); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 720 F. Supp. 1379,

PLAINTIFFS' MPA ISO COMBINED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS

1  1392 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th
2  Cir. 1992).

3    The proposed settlements satisfy the preliminary approval standard.  Notice
4  of a fairness hearing should issue forthwith to the Settlement Classes.

5  **V.**  **<u>CERTIFICATION OF THE SETTLEMENT CLASSES IS PROPER</u>**

6    The Parties have stipulated to class certification for settlement purposes
7  only.  *See* Ex. A ¶4 (Preliminary Approval Order) to Furukawa Decl. Exs. 1 and 2.
8  The Supreme Court has expressly approved the use of a settlement class.  *See*
9  *Amchem Prods. v. Windsor*, 521 U.S. 591 (1977).  Plaintiffs request the Court enter
10 the Preliminary Approval Orders conditionally certifying classes for settlement
11 purposes, defined as "all persons or entities who paid premium text message
12 charges in connection with entering the 'Lucky Case Game' promotion, and who
13 did not win a prize" in *Herbert* and "all persons or entities who paid premium text
14 message charges in connection with entering the 'American Idol Challenge'
15 promotion, and who did not win a prize" in *Couch*.

16   The agreed-upon Settlement Classes satisfy all requirements of Federal Rule
17 of Civil Procedure 23(a) and (b)(3).

18   **A.**  **The Settlement Classes Are so Numerous that Joinder of All**
19     **Settlement Class Members Is Impracticable**

20   Rule 23(a)(1) requires that the class be so numerous that joinder of all class
21 members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  "For purposes of Rule
22 23(a)(1), 'impracticability does not mean impossibility, but only the difficulty or
23 inconvenience of joining all members of the class.'"  *Applied Micro Circuits*, No.
24 01CV0649-K, 2003 U.S. Dist. LEXIS 14492, at *7 (S.D. Cal. July 10, 2003)
25 (citation omitted).  "Numerosity does not presume a strict numerical cut-off.
26 Courts have certified classes whose membership sizes range from less than one
27 hundred to over one hundred thousand."  *In re VeriSign, Inc. Secs. Litig.*, No. C
28 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *12 (N.D. Cal. Jan. 13, 2005).

Joinder is presumed impracticable when the proposed class numbers are in the hundreds.  *See* 1 Herbert Newberg, Newberg on Class Actions, § 3.05 at 3-25 (3d ed. 1995) ("certainly, when the class is very large – for example, numbering in the hundreds – joinder will be impracticable").  Further, the exact size of the class need not be known so long as general knowledge and common sense indicate that the class is large.  *See Schwartz v. Harp*, 108 F.R.D. 279, 281 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification").

Plaintiffs' proposed Settlement Classes easily satisfy the numerosity requirement of Rule 23(a).  The size of the Settlement Classes is at least eight million and over two million in "Deal or No Deal" and "American Idol," respectively.  Defendants marketed Lucky Case Game and American Idol Challenge, literally, to every NBC and Fox prime-time television viewer in the country, respectively.  The invitation to participate in the lotteries was broadcast numerous times during every broadcast of NBC's "Deal or No Deal" game show and Fox's "American Idol" during the respective class periods.

### B.    Common Questions of Law and Fact Exist

Rule 23(a) also requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "This requirement has been liberally construed and 'those courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts.'"  *Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996) (citation omitted).

The commonality requirement is satisfied if the claims of the prospective class share even one central question of fact or law.  *See, e.g.*, *Hanlon* 150 F.3d at 1019-20 (certifying class where claims all stemmed from allegedly defectively designed rear minivan lift gate latch, even where particular class members "possess[ed] different avenues of redress"); *see also Wehner v. Syntex Corp.*, 117

- 12 -

F.R.D. 641, 644 (N.D. Cal. 1987) ("Plaintiffs' burden of meeting the requirement of Rule 23(a)(2) is fulfilled by showing a single issue common to all members of that class.").  It is not necessary that all questions of fact or law be common, but that some questions are common and that they predominate over individual issues. *See Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."); *In re Heritage Bond Litig.*, MDL No. 02-ML-1475 DT, 2004 U.S. Dist. LEXIS 15386, at *14 (C.D. Cal. July 12, 2004) ("it is not necessary that every issue of law or fact be identical"); *Knapp v. Gomez*, No. 87-0067-H(M), 1991 U.S. Dist. LEXIS 11012, at *4 (S.D. Cal. June 25, 1991) ("this court follows the Ninth Circuit, along with the overwhelming weight of authority, in refusing to find that class certification is defeated by the possibility of individual questions pertaining to one of the elements of the case's causes of action").  Thus, commonality "is not defeated by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Here, questions of law and fact common to all Settlement Class Members include:

(a)     whether Defendants conducted illegal lotteries;

(b)     whether Lucky Case Game and American Idol Challenge contained the elements of chance, consideration, and a prize so as to constitute lotteries under California State case law;

(c)     whether, in return for the premium text message fees they incurred, Settlement Class Members received anything of equivalent economic value in return;

(d)     whether the act of conducting lotteries was performed by Defendants in whole or in part within the State of California;

1    (e)    whether Lucky Case Game and American Idol Challenge

2    constituted unfair business practices by which Defendants acquired money paid by

3    Settlement Class Members, and whether Settlement Class Members should, under

4    California's Unfair Competition Law, be granted restitution for amounts they lost;

5    (f)    whether Settlement Class Members in *Couch* are entitled to

6    relief under Connecticut State law; and

7    (g)    whether Settlement Class Members in *Herbert* are entitled to

8    relief under Massachusetts State law.

9    Underlying these basic common questions is a common nucleus of operative

10   facts pertaining to Defendants' operation and promotion of the Lucky Case Game

11   and American Idol Challenge.    Thus, the Settlement Classes satisfy the

12   commonality requirement of Federal Rule of Civil Procedure 23(a).

13   **C.    Plaintiffs' Claims Are Typical of Those of the Settlement**
         **Classes**
14

15   "[R]epresentative claims are 'typical' if they are reasonably co-extensive

16   with those of absent class members; they need not be substantially identical."

17   *Hanlon*, 150 F.3d at 1020; *accord Staton* 327 F.3d at 957.  '"[T]he focus should be

18   on the defendants' conduct and plaintiff's legal theory, not the injury caused to the

19   plaintiff."'    *Miletak v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 26913, at *30

20   (N.D. Cal. Mar. 5, 2010) (citation and internal quotations omitted).  Rule 23(a)(3)

21   requires only that there be no express conflict between the representative parties

22   and the class over the very issue in litigation and that the representatives' interests

23   are not antagonistic to the class' interests.  *Stolz v. United Bhd. of Carpenters &*

24   *Joiners, Local Union No. 971*, 620 F. Supp. 396, 404 (D. Nev. 1985).

25   The typicality requirement is satisfied here because Plaintiffs and Settlement

26   Class Members allege the same set of operative facts.  Defendants' course of

27   conduct – promoting lotteries in which Settlement Class Members were repeatedly

28

1   urged to enter by premium text message – uniformly affected all Settlement Class

2   Members because each was induced to enter the lottery thereby.

3       **D.**    **The Adequacy Requirement Is Satisfied**

4       Rule 23(a)(4) provides that class representatives must "fairly and adequately

5   protect the interests of the class."   Fed. R. Civ. P. 23(a)(4).   The adequacy

6   requirement is met if the class representatives meet two conditions: "(1) the class

7   representative must not have interests antagonistic to the unnamed class members,

8   and (2) the representative must be able to prosecute the action 'vigorously through

9   qualified counsel.'"  *Clesceri v. Beach City Investigations & Protective Servs.*, No.

10  CV-10-3873-JST (RZx), 2011 U.S. Dist. LEXIS 11676, at *18 (C.D. Cal. Jan. 27,

11  2011) (citing *True v. Am. Honda Motor Co.*, No. EDCV 07-287-VAP (OPx), 2009

12  U.S. Dist. LEXIS 29814 at *13 (C.D. Cal. Mar. 25, 2009); *Lerwill v. Inflight*

13  *Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

14      The adequacy requirements are met here.  None of Plaintiffs' claims conflict

15  with the Settlement Class' claims.   Plaintiffs are vigorously pursuing common

16  claims on behalf of themselves and all Settlement Class Members.   Further,

17  Plaintiffs retained attorneys with extensive experience in the area of consumer

18  class action litigation who have successfully prosecuted numerous class actions

19  and other complex litigation on behalf of injured consumers in this District and

20  across the country.   There can be no legitimate dispute that Plaintiffs' Counsel

21  have vigorously and skillfully prosecuted these Actions, securing settlements that

22  are in the Settlement Class' best interests.

23      The second requirement also is satisfied here. There is no antagonism

24  between the proposed Settlement Class Representatives and the absent Settlement

25  Class Members.  All claims arise from the same set of operative facts and course of

26  conduct, and both Settlement Class Representatives and absent Settlement Class

27  Members share the common goal of maximizing recovery.  *Lubin v. Sybedon*

28  *Corp.*, 688 F. Supp. 1425, 1461 (S.D. Cal. 1988).

### E.   The Proposed Settlement Classes Satisfy Rule 23(b)(3)

In addition to meeting the prerequisites of Rule 23(a), the present actions satisfy the requirements of Rule 23(b)(3), which mandate common questions of law or fact predominate over individual questions and that a class action is superior to other available methods of adjudication.  *See Hernandez v. Alexander*, 152 F.R.D. 192, 193-94 (D. Nev. 1993).  As shown above, common questions of law and fact predominate in these cases and a class action is the superior, if not the only, method available to fairly and efficiently litigate these claims.

### 1.   Common Questions of Law and Fact Predominate

The focus of Rule 23(b)(3)'s predominance test is on whether the Class claims arise out of the same legal or remedial theory.  *See Hanlon*, 150 F.3d at 1022 (predominance test met where common nucleus of facts and potential legal remedies dominate the litigation).  "'When one or more of the central issues in the action are common to the class and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'"  *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995) (quoting 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1778 at 528-29).   Predominance exists where "generalized evidence . . . proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position."  *Potash Antitrust*, 159 F.R.D. at 693 (citations omitted).  Because the evidence to be presented herein, such as, for example, Defendants' methods of soliciting entries into the Lucky Case Game and American Idol Challenge, will prove the elements of illegal lotteries on a class-wide basis, the predominance requirement is satisfied here.

### 2.     A Class Action Is Superior to Other Available Methods for Resolving this Controversy

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The superiority inquiry involves a determination as to whether the objectives of the class action procedure will be achieved in the particular case and a comparison of alternative mechanisms of dispute resolution.  *Hanlon*, 150 F.3d at 1023.  "Superiority is demonstrated where 'class-wide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Heritage Bond*, 2004 U.S. Dist. LEXIS 15386, at *36 (citation omitted).

A class action is particularly appropriate and is generally found a superior mechanism for litigating actions with large numbers of possible class members.  *In re THQ, Inc. Secs. Litig.*, No. CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753, at *30 (C.D. Cal. Mar. 22, 2002).   Determining superiority entails "focus[ing] on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis."  *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 612 (S.D. Cal. 2010) (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001)); *see also Yamner v. Boich*, No. C-92-20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *13 (N.D. Cal. Sept. 15, 1994) (superiority established where there are large number of injured individuals but each has relatively small claim for damages); *DJ Orthopedics, Inc. Secs. Litig.*, No. 01-CV-2238-K (RBB), 2003 U.S. Dist. LEXIS 21534, at *29 (S.D. Cal. Nov. 16, 2003) (class action superior because the alternative would be the filing of individual actions, which would certainly unnecessarily burden the judiciary, and litigation costs might dwarf potential recovery for many class members).  "'[A]ny doubts should be resolved in favor of allowing a class action'" because it offers plaintiffs with small claims the chance to obtain redress through aggregation.  *Heritage Bond*, 2004 U.S. Dist. LEXIS 15386, at *36 (citations omitted).

Here, Plaintiffs present class-wide allegations premised on common evidence. Trying each class claim separately would be inefficient, when each of thousands of cases would allege identical misconduct and offer identical proof. Most of those injured have not been damaged to a degree where it would be cost-effective for them to seek recovery on their own. Further, without the class settlement device, Defendants could not obtain class-wide releases, and therefore would have little, if any, incentive to enter into the settlements. Certification of the Settlement Classes will permit the claims administration to proceed in an organized and efficient manner. Resolution of Plaintiffs' and the Settlement Class' claims against Defendants through the proposed Settlement Classes is superior to any other available method of resolution. Accordingly, certification of the Settlement Classes is appropriate.

## VI.   THE PROPOSED NOTICE IS ADEQUATE

### A.   Rule 23 Notice Satisfies All Applicable Requirements

Federal Rule of Civil Procedure 23(c)(2)(B) provides, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e)(1) says, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

Where notice is being sent in connection with a proposed settlement, the notice must inform class members about the settlement's terms and their options with respect thereto. *See Torrisi*, 8 F.3d at 1374. Concerning the content of the Notice, Rule 23(c)(2)(B) provides:

> The notice to a Rule 23(b)(3) class must concisely and clearly state in plain, easily understood language:

>> •   the nature of the action,

>> •   the definition of the class certified,

- 18 -

1          •    the class claims, issues, or defenses,

2          •    that a class member may enter an appearance

3          through counsel if the member so desires,

4          •    that the court will exclude from the class any

5          member who requests exclusion, stating when and how

6          members may elect to be excluded, and

7          •    the binding effect of a class judgment on class

8          members under Rule 23(c)(3).

9          In accordance with Rule 23, a comprehensive joint Class Notice was

10   designed to reach the maximum number of Settlement Class Members in both

11   *Herbert* and *Couch* under the best notice practicable.  *See* Exhibit A and ¶¶ 13-39

12   of Exhibit C (Claims Administrator Decl.) to Exhibits 1 and 2 of the Furukawa

13   Decl.   The Class Notice was designed to ensure a comprehensive reach, and

14   includes:

15          (i)     one-time advertisement insertions in newspapers circulated in the

16   most populated markets across the United States;

17          (ii)    case-dedicated Settlement Websites;

18          (iii)   targeted press releases; and

19          (iv)    targeted advertising on the Internet.

20   *See* Exhibit C ¶14 (Claims Administrator Decl.) to Exhibits 1 and 2 of the

21   Furukawa Decl..

22          Comprehensive targeted advertising on the Internet, including sponsored

23   links on major search engines such as Yahoo, Google, and Bing, and banner

24   display advertising through Facebook, will assist Settlement Class Members in

25   locating the Settlement Websites and receiving legal notice of the settlements.  *See*

26   *id.* ¶¶ 26-33; *Manual for Complex Litigation 4th* at § 21.311 ("many courts include

27   the Internet as a component of class certification and class settlement notice

28   programs.").

The Settlement Websites, in addition to providing a copy of the Long-Form Notices of settlement, as described below, will provide information regarding the Actions and settlements, including specific case documents, frequently asked questions, information regarding Settlement Class Members' rights, and a toll-free number through which additional information can be requested. The Settlement Websites will also provide information and directions for filing claims, including a copy of the Claim Form which may be submitted online or by mail. *See* Exhibit C ¶ 35 (Claims Administrator Decl.) and Exhibit 3 (Claim Form) to Exhibit A of Exhibits 1 and 2 of the Furukawa Decl.

The Long-Form Notices, which will appear on the Settlement Websites, describe in simple language the nature, history and status of the Actions, set forth the Settlement Class definitions, state the claims and issues, disclose the right of people who fall within the Settlement Class definitions to exclude themselves from it, as well as the deadlines and procedures for doing so and warn of the binding effect of the settlement approval proceedings on people who stay in the Settlement Classes. In addition, the Long-Form Notices describe the settlements, set forth the benefits Plaintiffs propose to distribute among the Settlement Classes, provide contact information for counsel, and set out the amount of attorneys' fees and expenses that Plaintiffs' Counsel intend to seek in connection with final settlement approval. The Long-Form Notices also disclose the date, time and place of the Fairness Hearing, and the procedures for commenting on the settlements and appearing at the hearing. *See* Exhibit 1 (Long-Form Notice) to Exhibit A (Preliminary Approval Order) of the Furukawa Decl. Exs. 1 and 2. The contents of the Long-Form Notices therefore satisfy all applicable requirements. *See* Exhibit C ¶ 21 (Claims Administrator Decl.) to Exhibits 1 and 2 of the Furukawa Decl.

The shorter Publication Notice, which will appear as one-time insertions in newspapers circulated in the most populated markets across the United States, provides the Internet addresses to the Settlement Websites as well as the 800

telephone number which Settlement Class Members may call to make a Claim by telephone. *See* Exhibit 2 (Combined Publication Notice) to Exhibit A (Preliminary Approval Order) of the Furukawa Decl. Exs. 1 and 2.  A party-neutral informational press release, which remains one of the most cost effective and powerful methods of notice, will also be issued at the start of the notice period to inform Class members of the settlement.  *See* Exhibit C ¶ 34 (Claims Administrator Decl.) to the Furukawa Decl. Exs. 1 and 2.

In addition to the Rule 23 notice program described above, the Parties agreed to provide supplemental notice following entry of the Final Approval Order to remind Settlement Class Members of the Claims Period and create additional awareness of the manner to file claims for compensation.  During this period, another party-neutral informational press release will issue, a one-time insertion will be included in the National Edition of USA Today, and the Claims Administrator will continue targeted advertising on the Internet.  *See* Exhibit A (Claims Notice Phase - Suggested Notice Plan) to Exhibit C (Claims Administrator Decl.) of the Furukawa Decl. Exs. 1 and 2.

While the Parties considered providing notice to the Settlement Class via text message, the Parties declined to include such notice here because of (i) potential privacy concerns; (ii) issues related to the accuracy of cellular phone numbers; and (iii) the costs associated with receipt of text messages.  Because the Parties only have approximately 75% of the cellular phone numbers used to enter the Games, any notice via text would be under inclusive.  Further, because people often change their cellular phone numbers, the accuracy of the phone numbers is questionable and any notice issued via text would be over inclusive, triggering potential privacy concerns related to issuing notice to non-Settlement Class Members. *See Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 00214, 2010 U.S. Dist. LEXIS 130682, at *18-19 (S.D.N.Y. Dec. 6, 2010) (rejecting use of text messages for class notice because it would be both under and over inclusive).  Finally, both

Settlement Class Members and persons not in the Settlement Classes may incur a fee to receive text message notice.

The Parties also considered generating an address list of the Settlement Class Members through reverse lookup of cellular phone numbers for direct mail purposes, however determined that the process would be cost prohibitive in relation to the potential reach. *See* Exhibit A (Analysis of Reverse Lookups to Generate Address List for Direct Mail Purposes) (estimating only a 6% - 27% success rate) and ¶¶ 19-20 to Exhibit C (Claims Administrator Decl) of Furukawa Decl. Exs. 1 and 2.

The proposed Class Notice satisfies all applicable substantive requirements, and therefore demonstrates that the settlements should receive preliminary approval by this Court.

## VII.   PROPOSED SCHEDULE OF EVENTS

The Court's entry of the proposed Preliminary Approval Orders  would, among other things, (i) direct notice of the settlements to Settlement Class Members; (ii) establish a date by which Settlement Class Members may submit a Request for Exclusion from the Settlement Class; (iii) establish a date by which Settlement Class Members may object to the settlements; and (iv) schedule the Fairness Hearing.  The Parties propose the following schedule of events:

| | |
|---|---|
| Commencement of Class Notice (Preliminary Approval Order ¶7) | within 10 calendar days after entry of the Preliminary Approval Order |
| Filing of Class Counsel's papers in support of final approval of settlement and their application for attorneys' fees and expenses and the awards to Plaintiffs for their time and efforts related to the Action (Preliminary Approval Order ¶17) | a date at least 20 days before the deadline for objections [and at least 48 days before the Fairness Hearing] |
| Deadline for Settlement Class Members to submit a Request for Exclusion from the Settlement Class (Preliminary Approval Order ¶12) | a date at least 28 days before the Fairness Hearing |

| | |
|---|---|
| Deadline for objecting to the settlement or the application for attorneys' fees and expenses and the awards to Plaintiffs for their time and efforts related to the Action (Preliminary Approval Order ¶14) | a date at least 28 days before the Fairness Hearing |
| Filing of Class Counsel's papers in response to any objections (Preliminary Approval Order ¶16) | a date at least 14 days before the Fairness Hearing |
| Fairness Hearing (Preliminary Approval Order ¶8) | at the Court's convenience, a date at least 75 days after the last notice published as part of the publication notice during the notice period [and at least 28 days after the deadlines for objection] |

## VIII.  <u>CONCLUSION</u>

These settlements are the result of years of vigorous litigation and hard-fought arm's-length negotiations by experienced counsel and an experienced mediator.  The settlements provide immediate relief to consumers and squarely remedies the issues alleged in the Actions, at no cost to Settlement Class Members. For the reasons set forth above, the proposed settlements warrant the Court's preliminary approval.

DATED:  September 7, 2011
           **MILBERG LLP**
           JEFF S. WESTERMAN
           MICHELLE FURUKAWA

           */s/ Jeff S. Westerman*
           JEFF S. WESTERMAN

           One California Plaza
           300 S. Grand Avenue, Suite 3900
           Los Angeles, CA 90071
           Telephone: (213) 617-1200
           Facsimile:  (213) 617-1975
           Email: jwesterman@milberg.com
           mfurukawa@milberg.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MILBERG LLP**
MICHAEL C. SPENCER
WILLIAM B. SCOVILLE, JR.
One Pennsylvania Plaza, 49th Floor
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
Email: mspencer@milberg.com
wscoville@milberg.com

*Lead Counsel for Plaintiffs*

**KIESEL BOUCHER LARSON LLP**
PAUL R. KIESEL
8648 Wilshire Boulevard
Beverly Hills, CA 90211
Telephone: (310) 854-4444
Facsimile:  (310) 854-0812
Email: kiesel@kbla.com

**WILLIAM A. PANNELL, P.C.**
WILLIAM A. PANNELL
433 Chateau Drive, NW
Atlanta, Georgia 30305
Telephone: (404) 353-2283
Facsimile:  (404)237-2384
Email: pannellbill@gmail.com

**KEVIN T. MOORE, P.C.**
KEVIN T. MOORE
6111 Peachtree Dunwoody Road, N.E.
Building C., Suite 201
Atlanta, GA  30328
Telephone: (770) 396-3622
Email: ktmlaw@bellsouth.net

*Attorneys for Plaintiffs Karen Herbert,*
*Judy Schenker, Jodi Eberhart, and Cheryl*
*Bentley*

- 24 -

DECLARATION OF SERVICE BY CM/ECF AND/OR MAIL

I, the undersigned, declare:

1.     That declarant is and was, at all times herein mentioned, employed in the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is One California Plaza, 300 South Grand Avenue, Suite 3900, Los Angeles, California 90071-3149.

2.     Declarant hereby certifies that on September 7, 2011, declarant served the PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS by electronically filing the foregoing document listed above by using the Case Management/ Electronic Case filing system.

3.     Declarant further certifies:

☐     All participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system

☒     Participants in the case who are registered CM/ECF users will be served by the court's CM/ECF system.   Participants in the case that are not registered CM/ECF users will be served by First-Class Mail, postage pre-paid or have dispatched to a third-party commercial carrier for delivery to the non-CM/ECF participants.

4.     That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of September, 2011, at Los Angeles, California.

_____

CAROL KIYOTOKI

<u>**SERVICE LIST**</u>
<u>**Related Cases**</u>

*Karen Herbert, Judy Schenker, Jodi Eberhart, Cheryl Bentley v. Endemol USA, Inc., NBC Universal, Inc., Verisign, Inc., M-Qube, Inc. and Don Jagoda Associates, Inc.*

USDC CENTRAL DISTRICT, CASE NO. 2:07-cv-03537-JHN-VBKx

| *Attorneys for Plaintiffs* | |
|---|---|
| JEFF S. WESTERMAN<br>jwesterman@milberg.com<br>SABRINA S. KIM<br>skim@milberg.com<br>MICHIYO MICHELLE FURUKAWA<br>mfurukawa@milberg.com<br>**MILBERG LLP**<br>One California Plaza<br>300 S. Grand Avenue, Suite 3900<br>Los Angeles, CA 90071<br>Telephone: (213) 617-1200<br>Facsimile: (213) 617-1975 | *Via ECF* |
| MICHAEL C. SPENCER<br>mspencer@milberg.com<br>WILLIAM B. SCOVILLE, JR.<br>wscoville@milberg.com<br>**MILBERG LLP**<br>One Pennsylvania Plaza, 49th Floor<br>New York, NY 10119-0165<br>Telephone: (212) 594-5300<br>Facsimile: (212) 868-1229 | *Via ECF* |
| WILLIAM A. PANNELL<br>**WILLIAM A. PANNELL, P.C.**<br>433 Chateau Drive, NW<br>Atlanta, Georgia 30305<br>Telephone: (404) 353-2283<br>Facsimile: (404) 237-2384<br>E-mail: billpannell@mindspring.com | *Via ECF* |
| KEVIN T. MOORE<br>**KEVIN T. MOORE, P.C.**<br>6111 Peachtree Dunwoody Road, N.E.<br>Building C., Suite 201<br>Atlanta, GA 30328<br>Telephone: (770) 396-3622<br>E-mail: ktmlaw@bellsouth.net | *Via ECF* |

| | | |
|---|---|---|
| 1 | PAUL R. KIESEL<br>**KIESEL BOUCHER LARSON LLP**<br>8648 Wilshire Boulevard<br>Beverly Hills, CA 90211<br>Telephone: (310) 854-4444<br>Facsimile: (310) 854-0812<br>E-mail: kiesel@kbla.com | *Via ECF* |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | *Attorneys for Defendants* | |
| 6 | | |
| 7 | CHAD S. HUMMEL<br>BRAD W. SEILING<br>**MANATT, PHELPS & PHILLIPS,**<br>**LLP**<br>11355 West Olympic Blvd.<br>Los Angeles, CA 90064-1614<br>Telephone: (310) 312-4000<br>Facsimile: (310) 312-4224<br>E-mail: chummel@manatt.com<br>bseiling@manatt.com | *Via ECF* |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | RONALD L. JOHNSTON<br>ANGEL L. TANG<br>**ARNOLD & PORTER, LLP**<br>777 South Figueroa Street, 44th Floor<br>Los Angeles, CA 90017-2513<br>Telephone: (213) 243-4000<br>Facsimile: (213) 243-4199<br>E-mail: angel_tang@aporter.com<br>Ronald_johnston@aporter.com | *Via ECF* |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | THOMAS V. REICHERT<br>PAUL S. CHAN<br>**BIRD, MARELLA, BOXER,**<br>**WOLPERT, NESSIM, DROOKS**<br>**& LINCENBERG, P.C.**<br>1875 Century Park East, 23rd Floor<br>Los Angeles, California 90067-2561<br>Telephone: 310 201-2100<br>Facsimile: 310 201-2110<br>E-mail: tvr@birdmarella.com<br>psc@birdmarella.com | *Via ECF* |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

| | |
|---|---|
| JAMES COOPER<br>MICHAEL P. LEWIS<br>**ARNOLD & PORTER, LLP**<br>555 Twelfth Street, NW<br>Washington, DC  20004-1206<br>Telephone:  (202) 942-5014<br>Facsimile:  (202) 942-5999<br>E-mail:  james_cooper@aporter.com<br>Michael_lewis@aporter.com | *Via MAIL* |
| PATRICIA L. GLASER<br>JAMES S. SCHREIER<br>SEAN RILEY<br>**GLASER, WEIL, FINK, JACOBS, HOWARD, AVCHEN & SHAPIRO, LLP**<br>10250 Constellation Blvd., 19th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 553-3000<br>Facsimile:  (310) 556-2929<br>E-mail: pglaser@glaserweil.com<br>jschreier@glaserweil.com<br>sriley@glaserweil.com | *Via ECF* |